## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TONY A. WILSON, | : | Demand for a six-member jury trial |
| Plaintiff, | : | |
| | : | 0 8 - 4 4 9 |
| vs. | : | |
| | : | Case No.: _____ |
| HOWARD E. EMOND, JR., | : | |
| In personal capacity and official capacity as | : | |
| Deputy Director of Attorney Services of the | : | |
| Connecticut Bar Examining Committee, | : | |
| | : | |
| Defendant. | : | |

**FILED**

JUL 18 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### COMPLAINT

### COUNT I

1. Mr. Wilson seeks to vindicate his rights protected by the First and Fourteenth Amendments to the Constitution of the United States and by 42 U.S.C. §1983. This court has jurisdiction of this civil action pursuant to 28 U.S.C. §1331 and §1343(a)(3) and (4). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201 and §2202.

2. Defendant HOWARD E. EMOND, JR. is sued in personal capacity and official capacity. Futernick v. Sumpter Twp., 78 F.3d 1051, 1055 n.5 (6th Cir. 1996) ("The directors of a state agency, no matter how far removed from the actions of agency employees, are proper parties to a suit for an injunction under § 1983.")

1

3. Mr. Emond was given unbridled discretion to evaluate Mr. Wilson's character. This permitted Mr. Emond to disapprove of Mr. Wilson's petitioning the Delaware Superior Court and the Florida Supreme Court.

4. Pursuant to written or unwritten Rules of the Connecticut Bar Examining Committee ("Committee"), Mr. Emond deprived Mr. Wilson of his First Amendment rights without a compelling state interest.

5. Mr. Wilson seeks declaratory and injunctive relief prohibiting defendant from using Mr. Wilson's First Amendment activities (right to petition the government for redress of grievances, and the right of access to courts) as a basis for denying his application.

6. An applicant for licensing in the State of Connecticut should not be denied a license because he or she has exercised First Amendment rights or challenged unlawful or questionable governmental conduct, solely because members of the Connecticut licensing committee decide they do not approve of what was said or done. Such an evaluation requires constitutionally mandated procedural safeguards.

7. Mr. Emond operated with unbridled discretion and the Committee's licensing process patently violates the First Amendment. Every person considering applying for a law license in Connecticut must be careful in his or her lawful actions and statements. This creates a chilling effect on other would-be applicants, who are not directly before the Court. Further, it is impossible for an applicant to ascertain what lawful speech would be unacceptable to the Committee.

2

8. The Committee's licensing process lacks uniform and objective decision-making guidelines, which are required by due process or equal protection of law standards under the Fourteenth Amendment. The Connecticut attorney licensing process, as it exists at this time, violates the First and Fourteenth Amendment. Such an imprecise regulatory scheme is facially invalid under the void-for-vagueness doctrine and overbreadth doctrines. Gentile v. State Bar of Nev., 501 U.S. 1030 (1991). The absence of precise standards permits, and indeed invites, arbitrary decisionmaking, fails to afford notice of disqualifying conduct, and chills the exercise of constitutional rights. The failure to have objective guidelines produces differential outcomes arising from an inherently subjective assessment of character, and can easily result in constitutional injury as it has here.

9. A person's opportunity to pursue a career is a fundamental liberty interest, which is protected by the Due Process and Equal Protection clauses of the Fourteenth Amendment. A person's right to pursue a chosen occupation under state licensing requires standardized rules of procedure and substance so that there is uniformity in their application by the authorized decision-maker. State regulations of fundamental activities must comport with constitutional mandates, among others, for equal protection of law.

10. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, Art. VI-1. PURPOSE., the purpose of character and fitness screening before admission to the bar is the protection of the public and the system of justice. The public interest requires that the public be secure in its expectation that those who are admitted to the bar are, at

3

the time of admission, worthy of the trust and confidence clients may reasonably place in their attorneys.

11. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, <u>Art. VI-2. STANDARD OF CHARACTER AND FITNESS.</u>, a lawyer should be one whose record of conduct justifies the trust of clients, adversaries, courts and others with respect to professional duties owed to them. A record manifesting a significant deficiency in the honesty, trustworthiness, diligence or reliability of an applicant may constitute a basis for denial of admission. Conduct that is merely socially unacceptable or the physical disability of the applicant is not relevant to character and fitness for law practice and will not be considered.

12. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, <u>Art. VI-3. BURDEN OF PROOF.</u>, the applicant bears the burden of proving his or her good moral character and fitness to practice law by clear and convincing evidence.

13. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, <u>Art. VI-4. GOOD MORAL CHARACTER AND FITNESS TO PRACTICE LAW.</u>, the concept of "good moral character and fitness to practice law" necessarily reflects the mores of the community as well as an estimate of the individual. The determination of present good moral character and fitness is made at the time of admission. In considering good moral character and fitness the Committee will attempt to view the applicant as a whole person and take into account the applicant's entire life

4

history rather than limit its view to isolated events in his/her life. The Committee's inquiry into an applicant's character and fitness emphasizes honesty, fairness and respect for the rights of others and for the law in general. There are no specific incidents, transgressions or misconduct which will result in disqualification. However, certain conduct indicates a lack of good moral character and/or fitness to practice law (See Art. VI-11 below).

14. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, <u>Art. VI-5. PROCEDURES.</u>:

    a. The applicant shall be given the opportunity to demonstrate present good moral character and fitness despite particular past conduct.

    b. When the Committee has information weighing against a determination of good moral character and fitness:

        i. The applicant shall be notified of the information, and

        ii. The applicant shall be provided the opportunity to submit such material as the applicant deems appropriate.

    c. When an applicant's past conduct raises a question as to his/her character and fitness, the Committee will take into consideration the following:

        i. The number of incident(s) (offenses); i.e. whether single, sporadic or repeated;

        ii. The seriousness of the incident(s) (offenses) and the degree of moral turpitude involved;

        iii. The time of commission; e.g. whether recent or remote past;

    iv. The age of the applicant at the time of the  incident(s) (offenses);

    v. Any mitigating circumstances;

    vi. The opinion of others about the applicant's moral character and fitness;

    vii. Evidence of rehabilitation;

    viii. Activities, jobs and civil service;

    ix. Any other pertinent information; e.g. degree of remorse.

d. If the applicant establishes present good moral character and fitness despite past conduct, the Committee will certify the applicant.

e. i). If the Committee believes there are matters which indicate a lack of good moral character and/or fitness, the Committee may refer the file to the Standing Committee on Recommendations for Admission to the Bar in the county in which the applicant resides or, if the candidate is not a resident of Connecticut, to such Standing Committee as the Committee shall deem appropriate.

ii). The Standing Committee shall review the file and shall notify the applicant by certified mail if it determines that an investigative hearing is necessary. The notice shall provide the date, time and location of the hearing and shall state in detail the matters to be inquired into at the hearing and shall advise the applicant that the hearing shall be recorded and that he or she may be represented by counsel. The Standing Committee shall report in writing to the Committee whether it recommends the applicant.

iii). Upon receipt of the report of the Standing Committee the Committee shall either adopt the findings or hold a formal hearing on the application. If the Committee determines that a formal hearing is necessary it shall prepare written specifications which shall be sent to the applicant by certified mail. The specifications shall provide the date, time and location of the hearing and shall state in detail the matters to be inquired into and the facts, which, if proved, would form the basis of the committee's determination of lack of good moral character and/or fitness. The specifications shall advise the applicant that the hearing shall be recorded and that he or she may be represented by counsel. However, an applicant may request a waiver of a formal hearing if the applicant is in agreement with the terms of the Committee's recommendation of admission with conditions as provided in Sections 2-9 and 2-11 of the rules of the Superior Court.

iv). The formal hearing shall be conducted before a panel of the Committee consisting of at least three (3) members appointed by the chairman which shall have the power to act for the Committee. Following the conclusion of the formal hearing, the panel shall make its findings of fact and recommendation for or against the admission of the applicant. The applicant shall be notified of the findings of fact and recommendation. If the hearing is not completed within six months of its commencement through no fault of the committee, the application shall be deemed to be withdrawn by the applicant. Said six month period may be extended by the

7

Committee upon good and sufficient cause shown by the applicant. A request for an extension must be filed by the applicant not less than thirty (30) days before the expiration of the six month period.

v). Any applicant who is dissatisfied with the Committee's recommendation concerning his or her character and fitness may, within sixty (60) days after notice of the Committee's recommendation, file with the administrative director a petition for reconsideration. The petition must contain new and additional material which the Committee has not previously considered. Only one such petition for reconsideration may be filed. Within 60 days of receipt of the petition for reconsideration, the Committee shall make its findings of fact and recommendation for or against the admission of the applicant. The applicant shall be notified of the findings of fact and recommendation.

15. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, Art. VI-6. CONTINUING CRIMINAL ACTIONS., factors such as pending incarceration, probation, the restrictions of parole still in effect or unfulfilled sentences, while not determinative, will generally be considered to indicate that the rehabilitation process has not been completed.

16. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, Art. VI-7. CONDUCT IN VIOLATION OF THE RULES OF PROFESSIONAL CONDUCT., engaging in any conduct which would have subjected the applicant

8

to discipline if he/she had already been a member of the bar will weigh strongly against a determination of good moral character and/or fitness. Similarly, lack of good standing in a jurisdiction where the applicant is (or was) admitted to the bar is indicative of a lack of good moral character and/or fitness.

17. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, Art. VI-8. CANDOR IN THE ADMISSION PROCESS., lack of candor in responding to questions posed on the application for admission to the bar in Connecticut (or elsewhere) or otherwise posed by the Committee or its staff may be independent grounds for a finding of lack of good moral character and/or fitness notwithstanding the fact that the underlying information would not, standing alone, have been grounds for such a finding. The Committee expects that all applicants will provide a complete and candid response to its inquiries, whether on the application or as part of a subsequent inquiry.

18. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, Art. VI-11. CONDUCT THAT CREATES A PRESUMPTION OF LACK OF GOOD MORAL CHARACTER AND/OR FITNESS TO PRACTICE LAW., the following conduct creates a presumption of and may result, in the absence of evidence to the contrary, in a finding of lack of good moral character and/or fitness to practice law:

        i. Conviction of a felony

       ii.  Course of conduct evidencing disregard for the law and the rights of others

      iii.  Fraudulent conduct, which shall include, but not be limited to plagiarism and other forms of academic misconduct

      iv.  False, misleading or incomplete disclosure on application for admission to the bar in Connecticut or elsewhere

      v.  Significant financial problems evidencing fiscal mismanagement

      vi.  Suspension or disbarment in another jurisdiction

      vii.  Revocation or suspension of another license or governmental authorization to conduct a profession, trade or business

      viii.  Substance abuse not under control

19. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, Art. VI-12. REAPPLICATION AFTER DENIAL., an applicant who is denied admission to the bar for lack of good moral character and/or fitness shall not be permitted to reapply within two years of denial; the denial may specify a longer period of time. An applicant so denied shall be required to retake and pass the bar examination.

20. Pursuant to Art. VI-5(a), and as a matter of U.S. Constitutional law, Mr. Emond had a statutory duty to give Mr. Wilson an opportunity to demonstrate his present good moral character and fitness despite any alleged particular past conduct.

21. Pursuant to Art. VI-5(a) and 5(b)(i)(ii), and as a matter of U.S. Constitutional law, Mr. Emond had a statutory duty to consider Mr. Wilson's 20 exhibits in

10

determining whether Mr. Wilson demonstrated his present good moral character and fitness despite any alleged particular past conduct.

22. Pursuant to <u>Art. VI-5(a) and 5(b)(i)(ii)</u>, and as a matter of U.S. Constitutional law, Mr. Emond maliciously and intentionally violated Mr. Wilson's due process rights by breaching his legal duty by disregarding Mr. Wilson's 20 exhibits.

23. Pursuant to <u>Art. VI-5(a) and 5(b)(i)(ii)</u>, and as a matter of U.S. Constitutional law, Mr. Emond maliciously, knowingly, and intentionally violated Mr. Wilson's due process rights by breaching his legal duty to inform the Chairman that Mr. Wilson had served Mr. Emond with his 20 exhibits, and Mr. Wilson had formally waived his constitutional right to personally appearance at his formal hearing.

24. Pursuant to <u>Art. VI-5(b)(i)(ii) and 5(e)(iii)</u>, and as a matter of U.S. Constitutional law, Mr. Emond maliciously, knowingly, and intentionally violated Mr. Wilson's due process rights by breaching his legal duty by not notifying Mr. Wilson of the Committee's intention to adopt the recommendation of the Florida Board of Bar Examiners' dated July 21, 2006.

25. On April 8, 2008, pursuant to <u>Art. VI-8</u>, the Committee formally charged Mr. Wilson with: lack of "Candor and credibility during the application process."

26. On April 8, 2008, pursuant to <u>Art. VI-11(iv)</u>, the Committee also formally charged Mr. Wilson with: "The applicant was denied admission to the bar of Florida on character and fitness grounds in 2006."

27. On April 8, 2008, pursuant to <u>Art. VI-11(iv)</u>, the Committee also formally charged Mr. Wilson with: "The applicant states in written documentation to the committee that his Florida bar application is "pending" which may constitute a false,

misleading and incomplete disclosure on his application for admission to the bar in Connecticut in light of the fact that he was denied admission to the Florida bar on July 21, 2006."

28. On April 8, 2008, pursuant to Art. VI-11(ii), the Committee also formally charged Mr. Wilson with: "The applicant's criminal history includes arrests for assault and battery and possession of marijuana, which may be evidence of a disregard for the law and the rights of others."

29. On April 8, 2008, pursuant to Art. VI-11(ii), the Committee also formally charged Mr. Wilson with: "The applicant was discharged from the Florida Department of Children and Families for excessive absences and conduct described as hostile, confrontational and threatening, which may be conduct evidencing a disregard for law and the rights of other."

30. On April 8, 2008, pursuant to Art. VI-11(ii), the Committee also formally charged Mr. Wilson with: "A Delaware Department of Corrections (DDOC) job offer made to the applicant as a Probation and Parole Officer was rescinded by the DDOC as a result of a background check conducted upon the applicant."

31. On April 11, 2008, Mr. Wilson answered and denied the Committee's six charges. Thereafter, Mr. Wilson provided to Mr. Emond 20 exhibits to establish his clear and convincing evidentiary prima facie case of his good moral character.

32. Pursuant to Art. VI-8 and Art. VI-11(iv), and as a matter of U.S. Constitutional law, Mr. Wilson's 20 exhibits clearly demonstrated that Mr. Wilson had been completely candid with the Committee, and Mr. Wilson had not been denied admission to the Florida bar on July 21, 2006.

33. Mr. Wilson received the Committee's transcript from his formal hearing which was held on June 13, 2008 ("transcript").

34. At the formal hearing, Mr. Emond knowingly, maliciously, and falsely testified to David A. Moraghan, Esquire, Chairman. ("Chairman").

35. Mr. Emond defamed Mr. Wilson with his malicious and false testimony during Mr. Wilson's formal hearing.

36. Mr. Emond was able to testify to facts that he knew to be false, because of his job title.

37. Mr. Emond was not required too and he did not produce any evidence to the Chairman to support his charges against Mr. Wilson.

38. Mr. Emond knew he was not authorized to testify for the State of Connecticut against Mr. Wilson, and by testifying against Mr. Wilson, Mr. Emond knowingly and maliciously violated Mr. Wilson's due process rights.

39. At the formal hearing, the Chairman asked Mr. Emond the following question "In addition, it's my understanding that he had either an incomplete application or he has not been completely candid with us in that he was denied admission in Florida." Mr. Emond's answer was "That's correct."

40. Mr. Emond maliciously and falsely stated to the Chairman that Mr. Wilson's Connecticut bar application is incomplete.

41. As the Deputy Director of Attorney Services, Mr. Emond knew that under Connecticut's law, a bar applicant can not receive a formal hearing until he has completed his bar application.

42. On or about September 6, 2007, Mr. Emond maliciously violated Mr. Wilson's due process rights by unjustifiably deactivating Mr. Wilson's bar application and placing his file off-site in an attempt to prevent Mr. Wilson from completing his bar application by December 31, 2007 deadline.

43. Pursuant to Art. VI-7., and as a matter of U.S. Constitutional law, in October 2007 and November 2007, Mr. Emond maliciously violated Mr. Wilson's due process rights by unjustifiably requiring Mr. Wilson to provide a good standing certificate from Florida when Mr. Emond knew Mr. Wilson had not been admitted to the Florida Bar.

44. After Mr. Wilson completed his bar application, Mr. Emond notified Mr. Wilson by letter, on April 1, 2008, that "A formal hearing on your Connecticut bar application will be held on Friday, June 13, 2008 at 1:30 p.m. in Hartford, Connecticut. You will be notified shortly via certified mail of the issues to be inquired into by the formal hearing panel pursuant to Article VI of the Regulations of the Connecticut Bar Examining Committee."

45. Mr. Emond maliciously and falsely stated to the Chairman that Mr. Wilson has not been completely candid with the Committee in that Mr. Wilson was denied admission to the Florida bar on July 21, 2006.

46. Mr. Emond was served with Mr. Wilson's 20 exhibits before he falsely testified "Mr. Wilson has not been completely candid with [the Committee] in that Mr. Wilson was denied admission in Florida."

47. On May 7, 2008 at 9:25 a.m. Mr. Emond received Mr. Wilson's "Submission of Mr. Wilson's Exhibits Offered into Evidence at his Formal Hearing, scheduled on

14

Friday, June 13, 2008 at 1:30 p.m." ("Submission 1"). Mr. Emond received Mr. Wilson's 12 exhibits.

48. Mr. Wilson has proof, a U.S. Postal Service Delivery Confirmation number 0307 0020 0002 9507 3806, showing that "Submission 1" was received by Mr. Emond.

49. On May 22, 2008 at 12:08 p.m., Mr. Emond received Mr. Wilson's "Addition 1: Statement and Submission of Mr. Wilson's Exhibits 13 - 15 Offered into Evidence at his Formal Hearing, scheduled on Friday, June 13, 2008 at 1:30 p.m." ("Submission 2").

50. Mr. Wilson has proof, a U.S. Postal Service Certified Mail number 7007 3020 0000 3654 1949, showing that "Submission 2" was received by Mr. Emond.

51. On June 9, 2008 at 11:47 a.m., Mr. Emond received Mr. Wilson's "Addition 2: Statement and Submission of Mr. Wilson's Exhibits 16 - 20 Offered into Evidence at his Formal Hearing, scheduled on Friday, June 13, 2008 at 1:30 p.m." ("Submission 3").

52. Mr. Wilson has proof, a U.S. Postal Service Certified Mail number 7007 3020 0000 3654 2564, showing that "Submission 3" was received by Mr. Emond.

53. Mr. Emond's malicious decision to not inform the Chairman of Mr. Wilson's 20 exhibits shows that he disapproved of Mr. Wilson's First Amendment right to petition the Florida Supreme Court and the Delaware Superior Court.

54. Mr. Emond's malicious decision to not inform the Chairman of Mr. Wilson's 20 exhibits shows that he disapproved of the doctrine of Full Faith and Credit.

55. Mr. Emond's malicious testimony and his malicious decision to not inform the Chairman of Mr. Wilson's 20 exhibits was the actual and proximate cause of the

Chairman making a motion to deny Mr. Wilson's admission to the Connecticut bar, because Mr. Wilson had intentionally decided not to appear and to answer questions before the Committee.

56. Mr. Emond's malicious testimony and his malicious decision to not inform the Chairman of Mr. Wilson's 20 exhibits was the actual and proximate cause of the Chairman making an amended motion during Mr. Wilson's formal hearing, which stated "Okay. I would amend my motion to include Attorney Bradley's comments concerning the Florida matter." See, transcript, page 5, lines 6 – 8. Ms. Bradley comments were "The only thing that I would add to that is we have the decision of the bar examining committee in Florida. And it appears that there was a lengthy hearing in Florida and a very well-thought-out and lengthy decision with respect to the applicant's application in Florida. And I would also suggest that we adopt the findings of the Florida bar examining committee, which found him to lack good moral character and fitness to practice law in Florida." See, transcript, page 4, lines 21 – 25, and page 5, lines 1 – 5.

57. Mr. Emond's malicious testimony and his malicious decision to not inform the Chairman of Mr. Wilson's 20 exhibits was the actual and proximate cause for Mr. Wilson not being admitted to the Connecticut bar on June 13, 2008.

58. Mr. Emond's malicious testimony and his malicious decision to not inform the Chairman of Mr. Wilson's 20 exhibits has caused Mr. Wilson to suffer financially.

59. The Committee's Index Exhibits only listed 1) Notice of Formal Hearing, 4/8/08, and 2) Green Card receipt of mailing. That is, the Committee only listed as its

16

exhibits the Notice of Formal Hearing, 4/8/08, and the Green Card receipt of mailing.

60. The Florida Board of Bar Examiners' recommendation dated July 21, 2006 was not offered and marked into the official formal hearing record dated June 13, 2008.

61. The Chairman's amended motion violates Mr. Wilson's due process rights, because the Florida Board of Bar Examiners' recommendation dated July 21, 2006 is not part of the official formal hearing dated June 13, 2008.

62. The Chairman's amended motion violates Mr. Wilson's due process rights, because the Committee did not give Mr. Wilson any notice that it planned to make the Florida Board of Bar Examiners' recommendation dated July 21, 2006 part of the official formal hearing dated June 13, 2008. It the Committee had, Mr. Wilson would have filed an objection.

63. The Chairman's amended motion violates Mr. Wilson's due process rights, because the Florida Board of Bar Examiners' recommendation dated July 21, 2006 is not a final decision. The official record in this case clearly shows Mr. Wilson appealed the Florida Board of Bar Examiners' recommendation dated July 21, 2006 to the Florida Supreme Court.

64. Mr. Emond's malicious testimony and his malicious decision to not inform the Chairman of Mr. Wilson's 20 exhibits was the actual and proximate cause of the Chairman making a motion to deny Mr. Wilson's admission to the Connecticut bar, because Mr. Wilson lacked candor in that he was denied admission to the bar of Florida on character and fitness grounds on July 21, 2006.

65. Mr. Emond's actions during Mr. Wilson's formal hearing contravene the First Amendment, Due Process and the Equal Protection clauses of the United States Fourteenth Amendment.

66. Mr. Emond's conduct in concealing information from Mr. Wilson as it concerns Charges 1, 4, and 5, thereby inhibiting Mr. Wilson from defending Mr. Emond's charges, violates Mr. Wilson's right to due process of law and affronts the First and Fourteenth Amendments to the Constitution of the United States.

67. As an attorney Mr. Emond knew, Mr. Wilson had a United States Constitutional due process right to participate in his formal hearing held on June 13, 2008 at 1:30 p.m. by written statements only.

68. In the transcript, page 3, lines 16 – 20 it states THE CHAIRMAN "It is my understanding from Mr. Emond that he's had conversations with Mr. Wilson. Mr. Wilson has indicated he's not going to appear?" MR. EMOND "That's correct, Mr. Chairman. That's correct."

69. Mr. Emond falsely leaded the Chairman to believe that Mr. Wilson verbally stated to you "I am not going to appear."

70. Mr. Emond falsely stated to the Chairman that he had conversations with Mr. Wilson.

71. Mr. Emond did not have any phone conversations with Mr. Wilson.

72. Mr. Wilson only had written correspondents with Mr. Emond.

73. At no time during the seven weeks, from April 21, 2008 thru June 13, 2008, did Mr. Emond notify Mr. Wilson that his personal appearance was required and if he

18

did not personally appearance, Mr. Emond would not offer Mr. Wilson's exhibits into the official formal hearing record.

74. On April 8, 2008, Mr. Emond, as the drafter, filed six charges against Mr. Wilson. In the charging document, it stated "Please advise the Deputy Director, Attorney Howard E. Emond, Jr., at the Connecticut Bar Examining Committee (860) 706-5135 if you will not attend the hearing. Failure to appear without prior approval may result in a denial of your application."

75. Pursuant to Mr. Emond's charging document dated April 8, 2008, Mr. Wilson advised Mr. Emond that he would participate in his formal hearing by written statements only.

76. Submission 1 stated in part: "Pursuant to Mr. Wilson's constitutional right to participate in his Formal Hearing on June 13, 2008 at 1:30 p.m. by written statements only, Mr. Wilson formally submits to the Committee his written statements and exhibits on this 5th day of May 2008." … "Again, Mr. Wilson waives his constitutional right to appear in person at his Formal Hearing on June 13, 2008 at 1:30 pm, and Mr. Wilson has participated in his Formal Hearing on June 13, 2008 at 1:30 p.m. by his written statements and exhibits."

77. Submission 2 stated in part: "Pursuant to Mr. Wilson's constitutional right to participate in his Formal Hearing on June 13, 2008 at 1:30 p.m. by written statements only, Mr. Wilson formally submitted to the Committee (five copies) of his written statements and 12 exhibits on the 5th day of May 2008. … "Again, Mr. Wilson waives his constitutional right to appear in person at his Formal Hearing

on June 13, 2008 at 1:30 pm, and Mr. Wilson has participated in his Formal

Hearing on June 13, 2008 at 1:30 p.m. by his written statements and exhibits."

78. Submission 3 stated in part: "Pursuant to Mr. Wilson's constitutional right to

participate in his Formal Hearing on June 13, 2008 at 1:30 p.m. by written

statements only, Mr. Wilson formally submitted to the Committee (five copies) of

his written statements and 12 exhibits on the 5th day of May 2008. In addition, on

May 20, 2008, Mr. Wilson formally submitted exhibit 13 and exhibit 14 (Frank J.

Lawrence, Jr.'s First Amended Complaint in civil case number 4:05-cv-14

RH/WCS), and exhibit 15 (Paul J. Schwiep, et al., Motion to Dismiss Complaint

by Defendants Schwiep and Hunter in civil case number 4:05-cv-14 RH/WCS) to

establish his good moral character. Also, Mr. Wilson submitted exhibits 14 and 15

in support of the dismissal of the Committee's Charges 1, 4, and 5. Now, Mr.

Wilson formally submits this document (exhibit 16), and exhibit 17

[Recommendation's 1) Rev. Johnson, 2) Lisa Waddell, 3) Irene Peterson, and 4)

Attorney John F. Brady[1], P.O. Box 277, Georgetown, DE., Office 302.856.7361,

Cell 302.542.5189], and exhibit 18 (page 7 signature page of the FBBE' Response

dated May 27, 2008), and exhibit 19 (Index to appendix from the FBBE), and

exhibit 20 (the five exhibits listed on the index to appendix) to establish his clear

and convincing evidentiary prima facie case of his good moral character. Also, Mr.

Wilson submits exhibits 16 thru 20 in support of the dismissal of the Committee's

Charges 1, 4, and 5. Rev. Johnson, Ms. Lisa Waddell, Ms. Irene Peterson, and

---

[1] Mr. Wilson provided attorney Brady with the Florida Board of Bar Examiner's
Response dated May 27, 2008, and related documents. Attorney Brady represented to Mr.
Wilson that Mr. Wilson had attorney Brady's recommendation to the Connecticut Bar.
Due to Mr. Wilson's late request, attorney Brady's recommendation is not attached.

20

Attorney John F. Brady recommend Mr. Wilson to the Connecticut Bar, because they believe Mr. Wilson has good moral character."

79. Concerning Submission 3, exhibit 18, Mr. Emond knew that in the Florida Board of Bar Examiners' Response dated May 27, 2008, the Florida Board of Bar Examiners stated "The Connecticut officials have a copy of the board's Findings of Fact, Conclusions of Law, and Recommendation which clearly reflects that the board's action in T.A.W.'s case was a recommendation to the Supreme Court of Florida."

80. Concerning Submission 3, exhibit 18, Mr. Emond knew that in the Florida Board of Bar Examiners also stated in its Response "In this case, source documents were given to Connecticut officials, so there was no miscommunication of what action was taken by the board in T.A.W.'s case."

81. Pursuant to the Regulations of the Connecticut Bar Examining Committee, Article VI – Guidelines for Assessment of Character and Fitness, Art. VI-6. CONTINUING CRIMINAL ACTIONS., Mr. Emond abused his discretion by not giving the Statutes of the Delaware General Assembly, Title 11 Del. C. subsection 4371-4374, full faith and credit. 11 Del. C. subsection 4371 states:

> The General Assembly finds that arrest records can be a hindrance to an innocent citizen's ability to obtain employment, obtain an education or to obtain credit. This subchapter is intended to protect innocent persons from unwarranted damage which may occur as the result of arrest and other criminal proceedings which are unfounded or unproven.

Delaware law clearly states that the statute's intent is to protect innocent persons from unwarranted damage which may occur as the result of arrest and other criminal proceedings which are unfounded or unproven. Mr. Emond

21

deprived Mr. Wilson of the specific protection, to obtain employment, of 11 Del. C. subsection 4371 by charging Mr. Wilson with charge 3. Moreover, the alleged misconduct was nolle prosequi and expunged pursuant to Title 11 Del. C. subsection 4371-4374.

82. Injury to First Amendment rights constitutes irreparable loss. Mr. Wilson has passed the State of New Jersey bar, and he should not be denied admission to the New Jersey bar, because of the State of Connecticut's violation of his First Amendment rights.

83. Injury to First Amendment rights constitutes irreparable loss. Mr. Wilson plans to pass the State of Pennsylvania's bar in July 2008, and he should not be denied admission to the Pennsylvania bar, because of the State of Connecticut's violation of his First Amendment rights.

84. Mr. Wilson will be irreparably harmed if he is not granted and injunction to enjoin the defendant from violating Mr. Wilson's constitutional rights, because if the defendant denies Mr. Wilson's admission to the Connecticut bar for lack of good moral character and/or fitness Mr. Wilson will not be permitted to reapply within two years of the denial. Also, Mr. Wilson will be required to retake and pass the Connecticut bar examination.

WHEREFORE, Plaintiff prays that this Court grant the following relief:

## General Relief Sought

(A) That the Court grant declaratory and injunctive relief, which prohibits the Defendants' use of constitutionally protected activities or other lawful conduct as a basis for the assessment of the moral character and fitness of applicants and as a basis for

22

denying character certification to attorney applicants, unless the Committee follows established constitutional requirements and guidelines;

(B) That the Court issue a declaratory judgment that the Committee's use of unbridled discretion described herein, including the absence of adequate and necessary safeguards to protect federally secured freedoms, cause the deprivation of rights guaranteed to the Plaintiff by the First and Fourteenth Amendments to the Constitution of the United States;

(C) That the Court enjoin Defendants to initiate, adopt, and otherwise implement procedures and practices to ensure that protected and lawful acts of applicants for licenses to practice law in Connecticut are not used as a basis for licensure denial;

(D) That the Court issue a declaratory judgment that the Defendants' practice of following a Committee policy of concealing adverse factual information considered by the Committee during character reviews but not provided to the applicants is unlawful, and enjoin any future enforcement of said policy;

(E) That the Court issue a declaratory judgment that it is unlawful to follow a Committee policy of concealing exculpatory information contained within the Defendants' files, and also declare that applicants are entitled to a full review of the investigative information contained in the Committee's files;

(F) That the Court issue a declaratory judgment that it is unlawful for the Defendants to follow the Committee policy of denying applicants the right to confront and cross-examine those whose words are used to deny the applicants a license, and further enjoin Defendants from making character recommendations based upon information from sources or individuals immune from a subpoena;

(G) That the Court issue a declaratory judgment that it is unlawful for Defendant HOWARD E. EMOND, JR., and/or their respective staff, to draft the Committee's findings of fact and conclusions of law or testify for the Committee, and enjoin any future enforcement of said policy; Relief Specific To Plaintiff's Application for Admission.

(H) That the Court declare that Plaintiff's First and Fourteenth Amendment rights have been violated by Defendants' licensing procedures regarding Plaintiff's application;

(I) That the Court declare that Plaintiff had a United States Constitutional fundamental liberty interest/due process right to participate in his formal hearing held on June 13, 2008 at 1:30 p.m. by written statements only.

(J) That the Court declares that Plaintiff's 20 exhibits that were served on Defendant HOWARD E. EMOND, JR. shall be made part of the official formal hearing record.

(K) That the Court declares that Plaintiff officially waived his constitutional right to appearance in person at his formal hearing and Plaintiff participated in his formal hearing by submitting his 20 exhibits.

(L) That the Court declares that Plaintiff was not denied admission to the bar of Florida on character and fitness grounds on July 21, 2006. And as of the date of the formal hearing, June 13, 2008, the Florida Supreme Court had not denied Plaintiff's admission to the bar of Florida on character and fitness grounds.

(M) That the Court enjoin Defendant HOWARD E. EMOND, JR. from denying Plaintiff a license to practice law without consideration of constitutional procedural safeguards concerning Plaintiff's constitutionally protected activities;

(N) Award Plaintiff reasonable costs and attorneys' fees;

(O) Actual damages, and punitive damages against Defendant HOWARD E. EMOND,

JR. in his personal capacity only; and Such other relief as are just and appropriate.

Dated: July 17, 2008

Respectfully submitted:

Tony A. Wilson
603 Mulberry Street
Milton, DE 19968
302-853-2620

Tony A. Wilson
603 Mulberry Street
Milton, DE 19968

SWSX
X-RAY



7007 2680 0001 7615 5807

CERTIFIED MAIL

7007 2680 0001 7615 5807



U.S. POSTAGE
PAID
MILTON DE
19968
JUL 17 08
AMOUNT
$4.72
00016025-02

U.S. District Court
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Tony A. Wilson

## DEFENDANTS
Howard E. Emond

**(b)** County of Residence of First Listed Plaintiff  Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Connecticut
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**FILED**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

JUL 1 8 2008

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place U.S. DISTRICT COURT of Business In This State DISTRICT OF DELAWARE | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

## VI. CAUSE OF ACTION
Brief description of cause:
violations of civil rights, etc.

## VII. REQUESTED IN
## COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
## IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE  7/17/08

SIGNATURE OF ATTORNEY OF RECORD
Tony A. Wilson

## FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE